We've raised two issues in this case, a suppression issue and a severance issue. I want to start with the suppression issue. This case involves the search of an iCloud account, a cloud-based storage account with the ability to host backups from multiple different electronic devices, in addition to a user's email, text messages, location data, photos, you name it. In all of this court's cases on electronic searches, it has not before dealt with a search for something as broad and all-encompassing as an iCloud account, which makes it all the more concerning that the huge two-and-a-half-year reservoir of data with a warrant lacking almost any semblance of particularity. The warrant in this case allowed the government to search for any violation of one of six broad target offenses, including conspiracy, wire fraud, attempt, money laundering. These are among the broadest offenses under the United States Code. They are derivative offenses that incorporate other statutes. As we note in our brief, this warrant would have allowed the government to search for violations of any federal crime. Let me interrupt for just one minute. I've got a little question about preservation on this issue. In the district court, the argument was focused on that there were specific statutes in a specific scheme, but on appeal, it seems to be that even with specific statutes, if the statutes themselves cover a broad range of criminal activity, that it's too broad. I recognize that the district court did rule on the more narrow issue. I also recognize that the government seems to have conceded that it's preserved, but I've got a little question about whether what was argued in the district court and what's being before us is the same. I think they are the same. In the motion to suppress brief, defense counsel argued that the search warrant was fatally overbroad, that it was a general warrant, and the reason for that was because it was not related to the specific offenses that the government was investigating, and that's at record volume of three pages 112. And as you noted, the district court recognized that. The district court passed on this issue, as the government acknowledges, which preserved it. But not only that, the government's counsel also recognized this issue. The government, in their response brief in the trial court, made the same arguments that the district court ultimately accepted. And so, both the government's trial counsel and the district court recognized and passed on this issue, preserving it for appeal. And then, as you noted as well, to the extent there would be any argument here that there's been a waiver, the government has noted that this is a potential issue and chose not to raise a waiver or forfeiture, so they've waived or forfeited the forfeiture, thus preserving this issue for appeal. Thank you. Let me skip ahead to the question of, let's assume that we agree with you on the search warrant. There's the question then of good faith, and what governmental misconduct is being deterred here, given the circumstances of this search and the warrant? So, first of all, the warrant itself is very clearly overbroad if you read through it. And just want to kind of back up and take this in pieces. As for the good faith defense, we need to bear in mind that the government bears the burden of proof on that defense. And many of the factual arguments that they make in their brief about how this search was conducted or what the officers believed or interpreted the warrant, they didn't make those arguments to the district court and they did not introduce any facts in the record to support those arguments. In particular, they note in one point that an AUSA reviewed the warrant in this case. If you go to the record in that, they are relying on one sentence in the warrant application that says an assistant United States attorney reviewed this warrant application and affidavit. It's not signed by the AUSA. We don't have any record in this case as to what that review entailed. And importantly, the statement says that an AUSA reviewed the warrant application and affidavit. It very clearly does not say that an AUSA reviewed the warrant. And that is important because the warrant application and affidavit have significant detail that never made it into the warrant itself. If you read the warrant application, it is very detailed as far as the information the government had. That did not make its way into the warrant. There's no record in this case that an AUSA reviewed the warrant. Other points I want to make on good faith is the government says in this case that there's no evidence that the officers searched outside of what their probable cause was for the warrant. The key phrase in that is there's no evidence. The government, we had a suppression hearing in this case. The government had the opportunity, had witnesses on the stand. They didn't elicit any evidence in this case as to how this search was actually performed. There's no record on that. And so again, this is the government's... Well, two things. One, isn't there a record about the effort to do a tank team on this matter? And doesn't that bespeak good faith? And also the question of whether the same searcher was involved in actually being an appliant on the warrant. I think both of those questions are raised here. Sure. So there is evidence in the record that when they ran across privilege records, they stopped and installed a filter team. There's no evidence though as far as whether they stayed within the scope of their reasonable or the probable cause for the search. There's no evidence in the record on that one way or the other. And so again, that is an issue on which the government bears the burden of proof and they didn't put any facts in the record on it. As for whether the same officer was involved at both the execution and applying for this warrant, that may be true. But the fact here is that the same thing was true in Leary and the same thing was true in the Supreme Court's decision in Groh. And the court in Groh actually cited that fact as something that cut against good faith because the officer who executed the affidavit and submitted the warrant should know that a warrant this plainly overbroad cannot support good faith reliance. Yes, but as a matter of logic, it also speaks to the fact that the person who did the search knew exactly what they should be looking for if the affidavit itself had information and that supported the investigation that was underway, right? Well, I think that's one possible inference or argument you could make from it. But the Supreme Court in Groh dealt with the exact same factual circumstances and inferred from that the opposite inference. We don't have any evidence in this record as to how the officers actually went about conducting this search, whether they stayed within the scope of their reasonable suspicion. That's an issue in which the government has a burden by preponderance of the evidence and they've not put any evidence in the record on that. Counselor, can I ask you about going back to the particularity requirement? You obviously argued that the amount of time frame of this iCloud account that was subject to search and the broad nature of the offenses. But shouldn't we consider the nature of the offenses and the context of those offenses that are under investigation here? Because this is a multi-year conspiracy where the evidence is likely to be communications, transactions, or what we call a paper case. Doesn't that matter in how we think about the particularity requirement here? I don't think so, Your Honor, because if we go back to Leary, that also was a paper case. And in that case, the government executed a warrant for the search of an office space and it was limited to violation of two federal export statutes. And even though those statutes are far narrower than any of the target offenses we're dealing with here, in particular the conspiracy statute, the court still said that those were the sort of broad federal offenses that could not particularize a warrant. And crucially, the court went further and said that reasonable officer would have known that. And in that case, the court was particularly concerned that the warrant application had significant additional detail that could have been used to draw down the scope of the warrant. That is the same circumstance we're dealing with here. The government, if you read their unincorporated warrant affidavit application, it contains significant additional detail that they could have used to particularize this warrant. What's an example? How could it have been limited? It could have been limited. They could have included affirmative language, affirmatively limiting it to a conspiracy against National Air Cargo. If you look at the warrant application, they had significant information at that time as to who these participants were in this conspiracy. They could have limited it to communications between my client and Mr. Tu, my client and John Ulos, my client and Mike Myers. They had references to specific bank accounts. They had references to specific phone numbers, to specific emails that were exchanged. There were, there's just a wealth of data in there, a wealth of information in there that they could have used to draw down significantly the scope of this warrant to the offenses for which they actually had probable cause. The government repeatedly argues throughout its brief that the warrant incorporated the affidavit by reference. Do you agree with that statement? That is, that is just completely false, Your Honor. The citation that they point you to is to the warrant application, which incorporates the attached affidavit. If you go to the warrant itself, it does not have any language of incorporation. This court in Leary, the Supreme Court in Gros said that if you're going to incorporate an attached affidavit, that incorporation language has to be in the unless the court has any further questions on the warrant piece. I wanted to transition. What, what, what page are you talking about? I mean, when I look at the search and seizure warrant, it speaks, it uses the language incorporated. I mean, what, what, what page of the record are you talking about? Your Honor, give me one second, please. Search and seizure warrant. I mean, is this Record Volume 3, pages 169? That's, that's the warrant application. So, the application for a search warrant does include incorporation language. The search warrant includes language of incorporation, but it's incorporating the attached A and B, which states the place to be searched and the things to be seized. But it does not include language in the warrant itself, incorporating the affidavit that was attached to the application. All right. I, I get your point. Let's, let's go on then to the question of severance. And on the question of severance, I have a preservation question myself. I mean, on the day of trial, the district court ordered, on the first day of trial, the district court ordered the filing of simultaneous briefs on the severance issue, and ultimately, Mr. Tu did file a brief, which the government responded to. Why didn't that order, as I read the record, seem to have clearly applied to your client as well, and your client did not file a brief? And therefore, why is that, why didn't your client waive that issue? Your Honor, at the time, if I'm remembering from the record, I think at the time that the court made that order, that was right after my client had made statements that were antagonistic to Mr. Tu. But Mr. Tu at that point had not made or unveiled this antagonistic defense towards my client. So there's no basis. My client can't move for a severance based on antagonistic defense based on the fact that she's making arguments that are antagonistic to her husband. That might be an argument for him, but it's not an argument for her. As soon as... Well, the record seemed to clearly imply it said simultaneous briefs, and the government responded to briefs and responded. So it wasn't simultaneous on the government's part. I mean, I won't pursue it at length because obviously it's about a record read. But I mean, it seemed to me that the court was speaking to both of the defendants. So you're saying that at that point, the defendant didn't have any severance issue on the table at the time that order was made? I don't have that specific order right in my mind of the record. But if it occurred at the time before Mr. Tu made their cross-examination of Mr. Ulos, then I don't think until that cross-examination happened, I don't think my client had a basis for a severance. But... What about the proffers? I mean, all the way back at the proffers, you had them pointing fingers at each other, and you had the government and the district court repeatedly warning both of the defendants that this was likely to be a problem. So on that point, Your Honor, the proffers, there are statements in there where both individuals are making statements that incriminate both of them together. But you can read those proffers, and I encourage you to read them. There is nothing in there where Mr. Tu gives even the slightest hint that he was going to unleash this antagonistic defense the way he did at trial. Nowhere in there is there any statement that his wife controlled and manipulated him into carrying out this alleged fraud. It is just a completely different story from the proffers to what was eventually portrayed at trial. As for the court's warnings, there were warnings on the record that it's generally ill advised for two defendants to have the same counsel. That's about the extent of it. There was some reference that their defenses might clash, but that doesn't make a severance defense based on antagonistic defenses then reasonably available. What do you do with Jones? I mean, why doesn't Jones completely undercut any sort of notion of antagonistic defenses in this case? Sure, Your Honor. So in Jones, that case involved a boyfriend and girlfriend that were involved in a bank fraud scheme. The girlfriend in that case made two brief comments, her attorney made two brief comments that suggested that the husband was the orchestrator of the scheme. They made a statement in opening statements and a statement in closing. There was no evidence elicited by the girlfriend's attorney during the course of the trial. It was those two brief statements, and the court looked at that in context and said that really wasn't the core of her defense. Here, the record is entirely different with how pervasive and antagonistic Mr. Tu's defense was to my client. Well, I can see that you would want to focus on that aspect of it, but the point was the court talked legally about whether the core of the defenses were different. In other words, whether they in some sense would negate each other, and the fact that Mr. Tu would say that his wife was the ringleader and his wife would say that, no, it wasn't me, there wasn't anything as a matter of law that would be antagonistic about those two things. Sure, Your Honor, and I just want to note that I am aware. Your Honor, in our case, it's not just that Mr. Tu was saying my client was the ringleader. He is saying that my client controlled and manipulated him into carrying out this alleged scheme for her benefit to feed her uncontrollable gambling addiction and lavish spending habits. We don't agree with that, but that is it. He is putting on her for coercing him into this conspiracy. Well, but his main defense was that the was not credible. I mean, that was his main defense, right? I don't believe that's quite right. That was certainly part of it, especially to the extent Mr. Yulos was using the term conspiracy throughout the trial, but the core of his defense, if you read his closing summation to the jury, the last slides that they put up there, it's here's the story behind the indictment. We told you at the beginning to look for the story behind the indictment. Here's the story. The story is that Mrs. Tu has been controlling and manipulating her husband into this scheme. And so while those two theories that Mr. Yulos was not entirely truthful and that Mrs. Tu controlled and manipulated her husband, those two things aren't mutually exclusive. Mr. Tu pursued both of those defenses, and his main theme to the jury in closing was that his wife manipulated him into this scheme. Thank you, counsel. Thank you. We'll hear from the government. Morning, your honors, and may it please the court. Rajiv Mohan for the United States. I'd like to start with suppression and particularly some of the points on good faith. I want to start particularly with what the government produced below, and I think it's worth noting that the suppression motion here arose in a slightly odd posture because the government started execution of the warrant, paused execution on account of the privilege concerns, and execution remained paused through litigation on the suppression motion. Now the government did present evidence regarding the execution up to that time, and I would point to pages 387 to 88 of volume one, where the government described that the agent conducted a focused search for communications between the named defendants and suspected co-conspirators. Now execution only resumed after the district court had already upheld the warrant, so the government really had no occasion or reason to provide further evidence concerning the subsequent execution. I would note that Ms. Tu did not ever challenge that subsequent execution as exceeding the scope of the warrant as construed by the district court to be limited to the specific conspiracy to defraud national. Do you now concede that the warrant is overbroad? We do not, your honor. We do believe that the warrant was limited to a specific conspiracy to defraud national. I think even if the court disagrees with us on that point, I would suggest And how do you get that from the language of the warrant? I mean it lists, I think there's four separate categories, and only one of them is limited to air national. Sure, and I think I would view that language as providing a contextual indication that the target offenses do relate to that conspiracy, and I think that's consistent with the approach this court has taken to interpreting warrants, where I think it has been able to discern limits from language that might not appear so limiting at first glance. And you know, I would cite a case like Wagner, for example, where you had 16 categories subject to seizure, some of which contained and expressed limitation to child pornography, some of which did not. And even for the ones that did not, this court was able to discern a nexus to child pornography, even though I think one might reasonably be able to see the inclusion of an expressed nexus as to some categories to imply the exclusion of one as to others. And at a minimum, the Wagner affidavit, it didn't use the word including, and that's part of your problem here, is that you've got these categories and then you've got this separate category where it is limited expressly to this particular conspiracy. I mean, I see some pretty significant differences between the warrant in Wagner and the one here. Sure, and I think at a minimum, I think both the including language and the affidavit demonstrate an intent to limit the warrant to the specific conspiracy, which I think supports good faith. But I think even if the court were to disagree that the warrant is limited to the specific conspiracy, I do think the target offenses combined with a date range does render the warrant sufficiently particular, given the nature of the conduct here. And I think that's because even if you had a further limitation that limited the warrant to evidence related to the conspiracy to defraud National, that would still raise the question of what evidence is related to the conspiracy. And, you know, this court has recognized that the purpose of the particularity requirement is to give agents, executing agents, practical guidance about what can and cannot be seized. And, you know, to sort of illustrate that point, Ms. Tu was involved in an ostensibly separate cryptocurrency Ponzi scheme, and yet it was the case that she often needed money from National to fund that scheme. So I think even offenses that might appear to be separate would be relevant to conspiracy to defraud National. And I think that reflects this court's observation in a case like Cooper, which is when we're talking about these sorts of complex, broad financial crimes, it is more difficult to define the item subject to seizure with particularity. But what about evidence of, say, motive? The warrant allowed the agents to go through this warehouse of data and look for evidence of motive. Well, really, couldn't that be anything? And what limiting principle is that when you're talking about communications between a married couple where the motive, as it was presented, could have been their love for each other? Does that allow agents then to pick out, you know, every communication of intimacy between the couple? Well, I think, Your Honor, this court has recognized that when we're talking about electronic warrants, there may be no practical substitute for searching in many folders or applications on a phone. And I think this court has also recognized that insofar as agents come across personal information, that is more just the nature and the ease of hiding electronic information. And I think, you know, again, even under a warrant limited to the specific conspiracy or communications between the twos, which I think Ms. Tu concedes would be particular, agents still would have come across those sorts of communications because they were entitled to look anywhere evidence might reasonably be found. So I think that, you know, regardless of how the warrant was framed, agents were going to have to look through Mr. and Ms. Tu's messages. I didn't understand that to be Judge Federico's point. I mean, what I understood the point would be there's a difference between going through a folder and seeing something and saying, oh, that's irrelevant, just like somebody would do a minimizing in a Title III. There's a difference between that and studying it, looking at it and cataloging it as evidence. I mean, those are two, the level of privacy invasion involved in those two different scenarios is material, right? I'm not sure it is. I mean, I think agents would in either case have to sort of make the determination. And, you know, I think it's worth noting that they're doing this at a relatively early stage in the investigation. So they're going to have to make those judgment calls and determine whether it is relevant to the conspiracy, even if the warrant is that limited. You know, I do want to. What do we do with Voss? We've got a decision that says that 18 U.S.C. Section 371, which is one of the target offenses here, is not enough to limit a warrant from being overly broad. I mean, you've got, I think, five other target offenses plus the one we've said is not a sufficient limitation. Sure. And I think the salient point is that in Voss, the only statute listed was the conspiracy statute, whereas here you have it cited alongside the other statutes Your Honor mentioned. And I think read in context, the conspiracy statute is a reference to conspiracies related conspiracies essentially to violate those other statutes. And I do think that is a material distinction. And I think the sort of language that Ms. Tu says the warrant should have had here that, you know, the warrant was limited to violations of Section 371, but only if the underlying offense was these other statutes is sort of the hyper technical language this court has said is not required. I would also like to address Leary since Ms. Tu relies heavily on that case. And I would note that at 846 F. 2nd, page 604 of Leary, the court talks about ways the warrant there could have been made more particular. And one of those ways was a time period limitation. And I think that is a strong indication that the warrant here was sufficiently particular or at a minimum that Leary does not preclude application of the good faith exception. What is your and as it relates to the good faith exception, what is your strongest authority that would indicate that the officers proceeded here with good faith? I mean, what case would you look to as your bell star if you needed to? Your Honor, I'm not sure any case is factually on point. I do think a case like Burgess or Otero contain all the general principles which we think are applicable here. Namely, a fairly detailed affidavit review by a prosecutor, evidence in the record of narrow execution. And then, you know, just the distinctions between Leary, which I think Ms. Tu really hangs her hat on in terms of arguing that the good faith exception does not apply. I do want to just clear up one factual point on good faith. The officer who executed this warrant was not the same officer who obtained this particular warrant, but the executing agent did obtain a number of other warrants around the same time, which contained a similarly detailed affidavit. And we've offered that citation in our answer brief, but it was not, in fact, the same agent who obtained this warrant that executed, but she wasn't. Okay, so the executor was which one? Anderson? Special Agent Palmer was the executor. Special Agent Anderson was the one who obtained the warrant. Okay. Counsel, what do you do with the incorporation argument? Your response brief says that the warrant incorporated the affidavit. That language seems to be absent from the warrant. What do you say to that? Yeah, I think that's probably a fair point on further reflection. I would note that the magistrate judge signed the application and the affidavit, so I think it is one sort of document, at least from the agent's perspective. But even for purposes of good faith, this court has held that an unincorporated affidavit can support good faith, and we believe that it does so here. Unless there are any further questions on suppression, I would like to turn to severance briefly with my remaining time, and I really want to focus on prejudice because I think that is where Ms. Tu's claim fails on the merits for the most straightforward reasons. I think it remains the case that she has not identified any evidence whose admissibility turned on the joint nature of the trial, and insofar as she relies on the more general notion stated in a case like that, the jury's ability to reach a reliable verdict was undermined. I would note not only did the district court give a limiting instruction, there's evidence that the jury followed that instruction, and that's specifically count 47 of the indictment, the verdict for which appears at pages 942 to 943 of volume 2 of the record, and that was a money laundering count where the jury acquitted Ms. Tu but convicted Mr. Tu, and I think that is as clear an indication as any that the jury followed the district court's instructions and was able to assess the evidence against each defendant separately. I do also want to address the question of mutual antagonism, and I would dispute the notion that Mr. Tu, that is, ever admitted to committing the fraud or argued that his wife coerced him into doing so. I don't think his defense was ever as clear as that. He certainly did cite Ms. Tu's influence, but I want to say a few things about that. The first is that I don't think it was the core of his defense. I think if you look at Mr. Tu's closing PowerPoint, which appears at page 1205 of volume 2, he devoted two slides to Ms. Tu's alone. Moreover, when Mr. Tu did talk about his wife's influence, it was as much her influence over others than it was her influence over him. Indeed, the only actual evidence he cited in closing regarding her influence over him was a car ride where she called him a horrible father and a monkey and a text message where she said, figure out if you want to be in this family, and that is hardly the sort of evidence that supports a coercion defense, which is one of many reasons why Mr. Tu did not, in fact, advance such a defense. Were the defenses mutually antagonistic under Jones? I don't think so, Your Honor. I think that in Jones, you had the same sort of finger pointing you have here. You specifically had one defendant saying the other one was the and exercise some measure of control. And I think you have the exact same thing here. And I would also point to a case like United States versus Lynn, where you had both sides pointing the fingers at each other. And I don't think that the Tu's offered anything more than that in terms of their antagonism. This is not a case where one of them raised, for example, an affirmative defense, which was directly and logically antagonistic. Counsel, what's your view on how we think about whether the basis of a motion to sever is reasonably available to a defendant before trial? Sure. I, you know, this court has not interpreted that phrase before. You know, in terms of authority, I think the application notes to the rule talk about whether the information needed to raise the claim is available. I also think the word reasonably implies some measure of reasonable foreseeability. And I think, you know, given the circumstances here, that was the case. Not only did Ms. Tu have access to Mr. Yolis's statements, there was also this long history regarding joint and separate representation, which I think raised a very real prospect of antagonism, especially once the Tu's received separate counsel. And in that regard, you know, I think if you look at the antagonistic, but I say my time is up, if I may just finish my thought briefly. If this court looks at the antagonistic defenses cases that the parties cite on the merits, most of them involve pretrial motions. And I think that's an indication that the rule does not operate the way Ms. Tu suggests that it does in practice. Anything further? Thank you, counsel, for your fine argument. Case is submitted.